# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# DIVISION

| | | |
|---|---|---|
| JUAN PENSADO, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No. 1:19-CV-157-LY |
| | § | |
| LIFE INSURANCE COMPANY OF | § | |
| NORTH AMERICA, A/K/A AND D/B/A | § | |
| CIGNA GROUP INSURANCE | § | |
| COMPANY, AND THE LIFE | § | |
| INSURANCE COMPANY OF NORTH | § | |
| AMERICA GROUP POLICY, | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE**

Before this Court are Defendant Life Insurance Company of North America's Rule 12(b)(6) Motion to Dismiss, filed on April 8, 2019 (Dkt. No. 12); Plaintiff's Response, filed on April 17, 2019 (Dkt. No. 14); and Defendant's Reply, filed on April 23, 2019 (Dkt. No. 15). On August 23, 2019, the District Court referred the above motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I.  BACKGROUND

Plaintiff Juan Pensado ("Plaintiff") worked at the Four Seasons hotel organization for nearly 30 years and was most recently the Director of Banquets for the Four Seasons Hotel in Austin, Texas. As the Director of Banquets, Plaintiff "had a very physical job requiring him to constantly

walk, stand, climb stairs all day—nearly 10-12 hours on a normal day and often for 18 hours a day." Dkt. No. 1 at ¶ 8.

In March 2014, Plaintiff stepped into a pothole and injured his left foot. Plaintiff was eventually diagnosed with Charcot foot, "a condition caused by nerve damage especially in people with diabetes, like Pensado, and which can further result in bone breakage, joint deterioration, foot ulcers and infections." *Id.* at ¶ 10. Plaintiff was prescribed pain medication and his foot was placed in a cast. After several months, Plaintiff attempted to return to work, but his injury worsened, and he eventually had to undergo several surgeries on his foot. Despite the surgeries and continued treatment, Plaintiff's condition did not improve. As a result of the surgeries and his restricted mobility, Plaintiff missed several months of work at the Four Seasons.

Through his employment with the Four Seasons, Plaintiff was eligible to apply for both short-term and long-term disability benefits under a disability benefits plan entitled the "Life Insurance of North America Group Policy" (the "Policy") issued by Life Insurance Company of North America, also known as CIGNA Group Insurance Company ("LINA").[1] Plaintiff applied and was granted 24 months of short-term disability benefits under the Policy, which provides for such benefits when a participant "is unable to perform the material duties of his or her Regular Occupation." *Id.* at ¶ 19.

In late 2014, Plaintiff lost his job with the Four Seasons because his disability prevented him from returning to work. Accordingly, Plaintiff applied for long-term disability benefits ("LTD") under the Policy, which provides that a participant is eligible for LTD benefits if he is "unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience." *Id.* at ¶ 22. Although LINA initially denied

---

[1] While Plaintiff refers to Defendant LINA as "LINA/CIGNA" or "CIGNA," the Court will refer to Defendant LINA herein as LINA.

Plaintiff's application in July 2015, it reversed its denial after Plaintiff appealed the decision. However, on June 15, 2017, LINA again denied, and continues to deny, LTD benefits to Plaintiff based on the "any occupation" language in the Policy, contending that Plaintiff could perform an occupation. Plaintiff alleges that LINA "unreasonably, arbitrarily and capriciously ignored a mountain of medical evidence and expert medical opinions from Pensado's treating doctors whose conclusions showed him *unable to perform any occupation*." *Id.* at ¶ 24. On December 12, 2018, Plaintiff received his final denial notice and was informed that he had exhausted all administrative appeals in his case.

While Plaintiff's LTD benefits claim was pending before LINA, Plaintiff also filed for Social Security benefits with the Social Security Administration ("SSA"). Plaintiff alleges that LINA referred him to Advantage 2000 Consultants ("Advantage"), a consultant company that represents individuals seeking Social Security disability benefits. Plaintiff retained Advantage to represent him in his claim for Social Security benefits and Advantage assigned Plaintiff an attorney for the proceedings. In September 2017, Plaintiff was awarded Social Security benefits.

Plaintiff alleges that he was not aware that Advantage "had a longstanding relationship with [LINA] in which . . . Advantage 2000 receives a contingency fee from [LINA] from the Social Security benefits . . . when it recovers such benefits for a person who may also be covered by a private plan for disability benefits." *Id.* at ¶ 49. Plaintiff alleges that this "[t]his contractual sweetheart arrangement between [LINA] and Advantage 2000 creates not only a conflict of interest between Advantage 2000 and Pensado, but also a breach of fiduciary duty between Pensado and the attorney who provides legal services to Pensado." *Id.* at ¶ 50. Plaintiff complains that this arrangement interfered with and reduced Advantage's objectivity in negotiating any subrogation by LINA to the Social Security benefits obtained for Plaintiff. "By receiving a contractual

contingent fee for work performed for [LINA] and ostensibly for Pensado's benefit, the fee arrangement between [LINA] and Advantage 2000 and its attorney assigned to represent Pensado creates an irreconcilable conflict of interest." *Id.* at ¶ 51. In addition, Plaintiff complains that Advantage shared with LINA confidential information obtained from representing Plaintiff in his Social Security proceedings. Thus, Plaintiff alleges that LINA tortiously interfered with "the contract that Advantage 2000 and its attorney have with Pensado, as well as with the fiduciary duties owed Pensado by Advantage 2000 and its attorney for the work they perform to obtain and retain as much of his Social Security benefits as possible." *Id.* at ¶ 53.

On February 19, 2019, Plaintiff filed this lawsuit against LINA and "Life Insurance Company of North America Group Policy," alleging (1) wrongful denial of benefits under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461 ("ERISA"), (2) failure to provide documents allegedly required by ERISA, and (3) breach of fiduciary duty under ERISA. Plaintiff also has asserted a tortious interference with business relationship claim under Texas law against LINA, alleging that LINA interfered with his business relationship with the consulting company and his lawyer who represented him before the Social Security Administration.

On April 8, 2019, LINA filed this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Life Insurance Company of North America Group Policy should be dismissed from this lawsuit because it is not a proper defendant under ERISA and is not a legal entity capable of being sued. LINA also argues that Plaintiff's Texas tortious interference claim is preempted by ERISA.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## III. ANALYSIS

### A. The Policy Document as a Defendant

LINA argues that Defendant Life Insurance Company of North America Group Policy should be dismissed as a defendant in this case because Plaintiff is attempting to sue the Policy *document*,

5

which is not a proper defendant under ERISA and is not a proper legal entity that can be sued. The Court agrees.

"ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans and to protect contractually defined benefits." *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998) (citation omitted). ERISA authorizes a civil action by a plan participant or beneficiary "to recover benefits due to him under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Fifth Circuit has recognized that proper defendants under ERISA include the employer, the employee benefit plan, "the party that controls administration of the plan," and third-party administrators who take on the responsibilities of the administrator. *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013) (quoting *Gomez–Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010)); *Musmeci v. Schwegmann Giant Super Markets*, *Inc.*, 332 F.3d 339, 349 (5th Cir. 2003).

While Plaintiff is correct that an employee benefit plan is a proper defendant under ERISA,[2] Plaintiff has not sued the employee benefit plan.[3] Instead, Plaintiff is attempting to sue the Policy document itself. Since the Policy document cannot be considered "the party that controls administration of the plan," the Policy document is not a proper defendant in this case. *LifeCare*, 703 F.3d at 845. In addition, Plaintiff has failed to respond to LINA's argument that the Policy document is not a legal entity capable of being sued. *See Combs v. City of Dallas*, 289 F. App'x 684, 686 (5th Cir. 2008) (dismissing defendant from case where plaintiff failed to show that

---

[2] *See Musmeci*, 332 F.3d at 349 (noting that the language of 29 U.S.C. § 1132(d)(2) "suggests that the plan is the only proper party defendant"); *Greenbaum v. Sedgwick Claims Mgmt. Servs., Inc.*, 111 F. Supp. 3d 764, 766 (W.D. Tex. 2015) ("Under the express language of ERISA's remedial provision, an employee benefit plan is a proper defendant under the statute.") (citing 29 U.S.C. § 1132(d)(1)).

[3] Defendant states that the employee benefit plan in this case is held by Policyholder VEBA, Inc. *See* Dkt. No. 15 at p. 2.

defendant had the capacity to sue or be sued as a separate and distinct entity). Based on the foregoing, Defendant Life Insurance Company of North America Group Policy should be dismissed from this lawsuit. Plaintiff will not be prejudiced by this dismissal as he has already sued the proper defendant in this case: LINA. As the Policy in this case clearly states, the Plan Administrator appointed LINA "as the named fiduciary for deciding claims for benefits under the Plan, and for deciding any appeals of denied claims." Dkt. No. 14-1 at p. 41

## B. ERISA Preemption

Plaintiff's tortious interference with business relationship claim under Texas law alleges that LINA interfered with his business relationship with Advantage and his attorney representing him in his Social Security proceeding. LINA argues that this claim is completely preempted by ERISA and must be dismissed.

Although there are two types of preemption under ERISA, complete and conflict, it appears that LINA's Motion to Dismiss conflates the two types of preemption. Regardless, the Court will address both preemption doctrines to determine whether either applies in this case.

### 1. Complete Preemption

First, ERISA may occupy a particular field, resulting in complete preemption under § 502(a), 29 U.S.C. § 1132(a). *Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336 (5th Cir. 1999). Complete preemption "functions as an exception to the well-pleaded complaint rule; 'Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Id.* at 336-37 (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)). Section 502, by providing a civil enforcement cause of action, completely preempts any state cause of action seeking the same relief. *Id.* at 337. "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement

remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."*Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004).

If complete preemption exists, a plaintiff's state law claims are subject to removal based on federal question jurisdiction, and ERISA offers the sole framework for relief. *See id.*; *Giles,*172 F.3d at 337. However, "complete preemption is jurisdictional in nature rather than an affirmative defense to a claim under state law." *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000). "In other words, complete preemption is not in these circumstances a way to dismiss state-law claims altogether." *Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*, 2018 WL 4211742, at *7 (W.D. Tex. Sept. 4, 2018); *see also Spear Mktg., Inc. v. BancorpSouth Bank*, 844 F.3d 464, 468 n.3 (5th Cir. 2016) (contrasting complete preemption, which "establishes federal subject matter jurisdiction over a state law claim," from ordinary conflict preemption, which "is an affirmative defense that a defendant can invoke to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law") (quotations omitted).

Because complete preemption is jurisdictional, and federal question jurisdiction is not in dispute in this case since Plaintiff has raised ERISA claims, the doctrine of complete preemption is not applicable in this case. *See Haynes v. Prudential Health Care*, 313 F.3d 330, 334 (5th Cir. 2002) (recognizing that because diversity jurisdiction existed, "there are no questions of jurisdiction to invoke an analysis of complete preemption on these facts consistent with § 502(a)"); *Sky*, 2018 WL 4211742, at * 7 (finding that complete preemption was inapplicable in case where federal question jurisdiction was not in dispute); *Hall v. NewMarket Corp.*, 747 F. Supp. 2d 711, 715 (S.D. Miss. 2010) (declining to conduct a complete preemption analysis where subject matter jurisdiction already existed). Accordingly, LINA's argument that Plaintiff's tortious interference claim is completely preempted by ERISA is misplaced.

## 2. Conflict Preemption

The Court next considers whether conflict preemption applies. "Conflict preemption, also known as ordinary preemption, arises when a federal law conflicts with state law, thus providing a federal defense to a state law claim, but does not completely preempt the field of state law so as to transform a state law claim into a federal claim." *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir. 2003). ERISA's conflict preemption clause states in part that with certain exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has "observed repeatedly that this broadly worded provision is 'clearly expansive.'" *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). However, the Court also has "recognized that the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.'" *Id.* (quoting *Travelers*, supra, at 655). Nevertheless, the reach of ERISA preemption is not limitless. *Rozzell v. Sec. Servs., Inc.*, 38 F.3d 819, 821 (5th Cir. 1994). Thus, some state actions "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983).

The Fifth Circuit has adopted a two-part test to determine when a state law claim "relates to" an employee benefit plan and thus is preempted by ERISA. State law claims are barred by § 1144(a) "if (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir. 1995). Because conflict preemption is an affirmative defense, LINA bears the burden

of proof on both of these elements. *Bank of La. v. Aetna US Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir. 2006).

The Court finds that Plaintiff's tortious interference with business relationship claim does not relate to Plaintiff's right to receive benefits under the Policy or Plan in this case, but rather to Plaintiff's separate claim for Social Security benefits. As clearly stated in the Complaint, Plaintiff's tortious interference claim alleges that LINA tortiously interfered with Plaintiff's business relationship with Advantage and his attorney representing him in the Social Security proceeding. This claim does not require an interpretation of the Plan or Plaintiff's right to receive benefits under the Plan. At most, the Plan appears merely as a backdrop for the alleged tortious interference claim. The Court finds that the tortious interference claim has "only a tenuous, remote, or peripheral" connection to the Plan in this case and therefore is not preempted by ERISA. *See Trustees of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 782 (7th Cir. 2002) ("Because ERISA does not provide any mechanism for plan administrators or fiduciaries to recoup monies defrauded from employee benefit trust funds by plan participants, garden-variety state-law tort claims must, as a general matter, remain undisturbed by ERISA; otherwise, there would be no way for a trust fund to recover damages caused by a plan participant's fraudulent conduct."); *Smith v. Texas Children's Hosp.*, 84 F.3d 152, 155 (5th Cir. 1996) (holding that fraudulent inducement claim was not preempted by ERISA since it did not necessarily depend on the scope of plaintiff's rights under the ERISA plan); *Hook v. Morrison Milling Co.*, 38 F.3d 776, 781–82 (5th Cir. 1994) (finding that plaintiff's negligence claim was not preempted where it related to employer's failure to maintain a safe workplace and not from a dispute over the administration of the employee welfare plan or the disbursement of benefits from the plan); *Sky*, 2018 WL 4211742, at *5-6 (state law tort claims were not preempted by ERISA where claims did not rely on interpretation or application of plan

terms); *Fustok v. UnitedHealth Grp., Inc.*, 2013 WL 2189874, at *5 (S.D. Tex. May 20, 2013) (finding that common law fraud claim was not preempted "simply because it may have a tangential impact on employee benefit plans" and noting that "[w]hether Fustok's billing practices are tortious does not require interpretation of the Plan"). Accordingly, LINA has failed to sustain its burden to show that Plaintiff's tortious interference with business relationship claim is preempted by ERISA.

## C. The Tortious Interference Claim

Last, LINA argues that Plaintiff's tortious interference with business relationship claim should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

To establish a claim for tortious interference with a business relationship or contract, a plaintiff must establish: (1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017).

Plaintiff alleges that LINA tortuously interfered with "the contract that Advantage 2000 and its attorney have with Pensado, as well as with the fiduciary duties owed Pensado by Advantage 2000 and its attorney for the work they perform to obtain and retain as much of his Social Security benefits as possible." Dkt. No. 1 at ¶ 53. In support of this claim, Plaintiff alleges that (1) he had a contract with Advantage and his attorney to represent him before the Social Security Administration; (2) LINA willfully and intentionally interfered with his contractual relationship with Advantage and his attorney, and their fiduciary duties owed to Plaintiff, by interfering with the duty Plaintiff's counsel had to solely represent his interests and not the interests of LINA in regard to his Social Security disability benefits claim; (3) LINA proximately caused his damages; and (4) he incurred actual damages "in that the amount of Social Security disability benefits he is

11

entitled to, and which his children are separately and independently entitled to, are now at risk of loss and of improper and unlawful alienation and subrogation, all of which is also causing Pensado significant and substantial mental anguish." Dkt. No. 1 at ¶¶ 53-55. The Court finds that these allegations state a plausible claim for tortious interference with a business relationship under Texas law.

LINA's Motion to Dismiss repeatedly states that Plaintiff "must present evidence" or "must produce some evidence" to support his allegations. Dkt. No. 12 at p. 10-11. Because this case is not at the summary judgment or trial stage, Plaintiff is not required to come forward with extensive evidence to support his allegations. Rather, at the motion to dismiss stage, the Complaint need only contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. The Court finds that Plaintiff has alleged sufficient facts to allege a plausible claim for tortious interference with a business relationship which is all that is required at the Rule 12(b)(6) stage.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant Life Insurance Company of North America's Rule 12(b)(6) Motion to Dismiss (Dkt. No. 12) be **GRANTED IN PART AND DENIED IN PART**. The undersigned **RECOMMENDS** that the District Court **DISMISS** Life Insurance Company of North America Group Policy as a Defendant in this case. The undersigned **FURTHER RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss Plaintiff's Texas tortious interference with business relationship claim. Accordingly, all of Plaintiff's claims against Defendant Life Insurance Company of North America remain pending in this lawsuit.

**IT IS FURTHER ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Lee Yeakel.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 3, 2019.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE